Motion to dismiss appeal denied December 8, 1942; argued
November 3; reversed December 7, 1943

In re Courtney's Will
McGUIRE et al. *v.* MARTIN et al.

(143 P. (2d) 910)

Before Bailey, Chief Justice, and Belt, Rossman,
Kelly and Lusk, Associate Justices.

*Leonard D. Alley,* of Portland, and *Glen R. Jack,* of Oregon City, for proponents and appellants.

*John F. Conway,* of Portland (Henry G. Kreis, of Portland, on the brief) for contestants and respondents.

KELLY, J. This is a proceeding instituted by the above named contestants against Lester E. Martin and Belle Miller, who were respondents in the trial court but are appellants in this court, to contest the validity of the last will and testament of Patrick Courtney, deceased. For the purpose of clarity, when we refer to Lester E. Martin and Belle Miller other than by name, we term them proponents.

Two grounds are assigned in contestants' petition for seeking to have the will in suit declared invalid, namely, alleged testamentary incapacity of decedent and undue influence exercised by the proponents and their attorney.

Upon oral argument in this court, contestants' attorney conceded that the record herein does not support the allegation to the effect that deceased was without testamentary capacity. The single question, therefore, is whether undue influence is shown by the record to have been exercised upon deceased when he signed the questioned document in suit.

The evidence of deceased's advanced age, impaired physical condition, immodest and unhygienic personal habits is relevant upon the question of his susceptibility to influence in the matter of disposing of his property by will. These features of the case, as reflected in the record, are in nowise chargeable to proponents and do not tend to prove that decedent was thereby influenced in making the will in suit.

In addition thereto contestants have introduced testimony to the effect that through the passing years, they, the contestants, gratuitously brought supplies, such as food, fruit and vegetables to decedent and they urge that on that account and because of the fact that they were his nephews and nieces they were the natural objects of decedent's bounty. This commendable recognition of a kinsman's natural capacity for enjoying such gifts falls far short of supporting the charge that proponents exercised undue influence over him.

The testimony discloses that for several years prior to decedent's death, proponent Belle Miller and her husband lived in proximity to decedent's abode. No facts are shown that Mrs. Miller attempted to influence decedent in any way.

About a year before his death, Mr. Courtney transferred his real property to proponent Lester E. Martin. The negotiations preliminary to that transfer were accompanied by advances made by Mr. Martin to Mr. Courtney. In attempting to secure title insurance, it was discovered that a deed from a former owner was not of record. The property had been sold upon execution issued upon a judgment against such former owner, but no deed from the sheriff had been obtained. Mr. Martin thereupon consulted Mr. Leonard D. Alley, an attorney with offices in Portland. Mr. Alley secured the execution of a sheriff's deed, brought about settlement between Mr. Courtney and Mr. Martin and an agreement between them as to the amount of advances Mr. Martin had made. The purchase price for the property was agreed upon in the sum of $4,000. The amount of Mr. Martin's advances was deducted from the amount of the purchase price and Mr. Martin executed a note for the balance payable in monthly installments of $25.00 without interest. No mortgage securing that

note was executed. Mr. Alley placed revenue stamps to the amount of $5.50 upon the deed that Mr. Courtney executed.

There is testimony in the record to the effect that Mr. Courtney told different people that he had sold his property for a larger sum than $4,000. Five thousand five hundred dollars was the amount said to have been stated by him. It appears in the testimony that at one time he stated to Mr. A. L. McGuire that he would not sell for less than $6,000.

The statement of balance due Mr. Martin for advances to decedent is shown in a receipt signed by Mr. Courtney in which the amount of the note is also stated. There is no testimony contradicting that of Mr. Alley and Mr. Martin with reference thereto or with reference to the terms and conditions attendant upon the transfer aforesaid.

It is argued that the amount of stamps upon the deed and these oral statements of decedent show that the actual purchase price was more than $4,000. Mr. Alley explains this by saying that while he had been advised that the requirements concerning the amount of revenue stamps to be placed on deeds had been changed, he was not advised as to the exact amount required and, without advising himself, he placed stamps thereon sufficient in any event to conform to the law.

It is also urged that undue influence is shown by the fact that no mortgage was required as security for the payment of Mr. Martin's note, and the further fact that a provision was included therein that the note should bear no interest. No statement by decedent appears in the record to that effect, although decedent lived for a year thereafter, and accepted payments in accordance with the terms of said note.

On the day Mr. Courtney executed his will, Mr. Martin brought him to Mr. Alley's office. Contestants refer to Mr. Alley as Mr. Courtney's attorney. The relationship between Mr. Alley and Mr. Martin of attorney and client is not shown to have existed when the will was executed. Nearly a year had elapsed after Mr. Alley's services in reference to the transfer of title by Mr. Courtney to Mr. Martin had terminated before the will in suit was executed.

In the trial court, as a witness for proponents, Mr. Alley testified to the effect that he had prepared the will at Mr. Courtney's direction, and had acted as one of the subscribing witnesses thereto; that he had seen Mr. Courtney sign it, which was done in his presence, and that of the other subscribing witness; that then and in their presence Mr. Courtney had published the will so signed as his last will and testament; and that he had followed Mr. Courtney's directions as to the terms of the will.

Upon cross-examination, Mr. Alley was asked if it were not a fact that at a later time in his office and in the presence of contestants, who were then and there given copies of the will in suit, he had said that Mr. Courtney had desired to leave his property to the Catholic Diocese, but he, Mr. Alley, had talked Mr. Courtney out of that. To this question Mr. Alley gave a negative answer.

Several of the contestants testified that Mr. Alley had made that statement.

It will be noted that the testimony of these contestants upon that point was clearly of an impeaching character. If it could be considered as bearing upon the issue of undue influence, it is not a declaration of a party against interest. Mr. Alley is not a beneficiary under the terms of the will in suit.

Mr. Alley and Mr. Martin testified that Martin had no part in the preparation or execution of the will in question in Mr. Alley's office. There is no testimony to the contrary.

The will in suit gave to decedent's nieces, named therein as Hannah McGuire, May McGuire and Katie Moran, decedent's equitable interest in the Knights of Columbus Building in Winnipeg, Canada. The testimony shows that this interest is of doubtful if any value.

Twenty-five dollars was bequeathed to decedent's nephew Tom McGuire.

Proponents, Lester Martin and Belle Miller, and contestant Andrew McGuire were made residuary legatees *pari causa.*

It is clear from the testimony that decedent had been on friendly terms with the parents of proponent, Mrs. Belle Miller, from the time of her early girlhood. There is absolutely nothing in the record which reflects upon her character. She is the mother of proponent, Lester Martin, who was named as executer in Mr. Courtney's will. Together with her husband she resided near to the Courtney house. The writer does not deem it necessary to sully the record by reciting the accounts of Mr. Courtney's indecencies as given by some of the contestants, but feels justified in saying that neither proponent was in any way accountable therefor or in the slightest degree contributed thereto.

Attention is called to the fact that Phyllis Grow, who signed the will in suit as a subscribing witness, was not called as a witness for proponents, and it is argued that her absence may be taken as an indication that, if she had been called as a witness, her testimony would have been adverse to proponents.

■■ The burden of proving the allegation of undue influence is upon contestants. The attorney for proponents stated at the opening of the trial that Miss Grow had been married, had left his employ and was living somewhere in southern California and that he had been unable to reach her. No presumption arises from these facts that the testimony of this subscribing witness, if given. would have been adverse to proponents.

■ A consideration of the entire record convinces us that contestants have failed to sustain their allegation of undue influence by a preponderance of testimony and therefore the decree of the circuit court should be reversed and a decree entered here upholding and giving effect to the will. It is so ordered, and it is further ordered that the costs in this court shall be paid out of the estate of decedent.